## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

SIMON MCKINNEY,                          )
                                     )
    Plaintiff,            )
                                     )
v.                                       )
                                     )     Case No.:  2:24-cv-01713-JHE
COMMISSIONER OF SOCIAL                   )
SECURITY,                                )
                                     )
    Defendant.            )

### MEMORANDUM OPINION[1]

Plaintiff Simon McKinney ("McKinney") seeks review, pursuant to 42 U.S.C. § 405(g), §

205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying his applications for supplemental security income

("SSI") and a period of disability and disability insurance benefits ("DIB").  McKinney timely

pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42

U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the

reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On June 5, 2021, McKinney protectively filed applications for a period of disability and

DIB and for SSI.  (Tr. 10).  For each application, McKinney alleged disability beginning on

November 1, 2018.  (*Id.*).  The Commissioner initially denied McKinney's claims on April 19,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 12).

2022, and denied them again upon reconsideration on August 16, 2022. (*Id.*). McKinney timely requested a hearing before an Administrative Law Judge ("ALJ"). Following a telephonic hearing on February 7, 2024, the ALJ entered an unfavorable decision on May 21, 2024. (Tr. 10–27). McKinney sought review by the Appeals Council, but it denied his request for review on October 31, 2024. (Tr. 1–6). On that date, the ALJ's decision became the final decision of the Commissioner. McKinney initiated this action on December 12, 2024. (Doc. 1).

McKinney was 51 years old on his alleged onset date. (Tr. 25). McKinney has past relevant work as a hair stylist and a retail sales manager/store manager. (*Id.*).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity

---

[2] In general, the legal standards applied are the same whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(3)  whether the claimant's impairment meets or equals an impairment listed by the Social

Security Administration ("SSA");

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps

One and Two, he or she is automatically found disabled if he or she suffers from a listed

impairment.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  "Once a claimant proves that

she can no longer perform her past relevant work, the burden shifts to the Commissioner to show

the existence of other jobs in the national economy which, given the claimant's impairments, the

claimant can perform."  *Id.* (cleaned up).

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the five-step evaluation process,

the ALJ made the following findings:

At Step One, the ALJ found that McKinney had not engaged in substantial gainful activity

since his alleged onset date.  (Tr. 13).  At Step Two, the ALJ found that McKinney has the

following severe impairments: bipolar disorder, generalized anxiety disorder ("GAD"), major

depressive disorder ("MJD"), post-traumatic stress disorder ("PTSD"), diabetes mellitus,

hypertension, and obesity.  (*Id.*).  At Step Three, the ALJ found that McKinney does not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.*).

Before proceeding to Step Four, the ALJ determined McKinney's residual functioning

capacity ("RFC"), which is the most a claimant can do despite his impairments.  *See* 20 C.F.R. §

404.1545(a)(1).  The ALJ determined McKinney has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 419.967(c) except he can frequently climb ladders, ropes, or scaffolds.  He can frequently balance, stoop, kneel, crouch, and crawl.  He can have occasional exposure to temperature extremes.  He can have no exposure to unprotected heights or hazardous machinery. He can understand, remember, and carry out simple instructions.  He can attend and concentrate to perform simple tasks for at least two hour intervals.  He can have occasional contact with the general public.  He can handle infrequent changes in the work setting.

(Tr. 17).

At Step Four, the ALJ found, relying in part on hearing testimony from a vocational expert, that McKinney is unable to perform his past relevant work.  (Tr. 25).  At Step Five, the ALJ found that, considering McKinney's age, education, work experience, and RFC, McKinney is able to perform jobs that exist in significant numbers in the national economy.  (Tr. 25–26).  Therefore, the ALJ determined McKinney has not been under a disability from November 1, 2018,  through the date of the decision.  (Tr. 27).  Thus, the ALJ denied McKinney's claim.  (*Id.*).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

McKinney raises a single argument: that the ALJ's RFC "failed to account for [McKinney's] moderate limitations in concentration, persistence, and pace . . . ." (Doc. 13 at 10–16).

The ALJ first discussed McKinney's limitations in concentration, persistence, and pace at Step Three, when evaluating McKinney's mental impairments for the "Paragraph B" criteria applicable to Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor-related disorders). (Tr. 14–17). The Paragraph B criteria "represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.00, Subpart P, Appendix 1, 12.00(A)(2)(b). Specifically, as to concentration, persistence, and maintaining pace:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § 404.00, Subpart P, Appendix 1, 12.00(E)(3). The ALJ assesses these criteria on a five-point rating scale using the following components: no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation. 20 C.F.R. § 404.00, Subpart P, Appendix 1, 12.00(F)(2). A claimant satisfies the Paragraph B criteria by showing one extreme limitation or two marked limitations. 20 C.F.R. § 404.00, Subpart P, Appendix 1, 12.00(A)(2)(b).

Assessing the Paragraph B criteria, the ALJ first noted two examinations by consultative psychologists predating McKinney's alleged onset date: a May 2019 evaluation by Sally Gordon, Psy.D., and a July 2020 evaluation by Scott Duncan, Psy.D. (Tr. 14–15). The ALJ noted that Dr. Gordon's evaluation was "able to provide some longitudinal history" and that Dr. Duncan's evaluation was "covered by the previous decision," referring to McKinney's prior unsuccessful application for DIB and SSI.[4] (Tr. 10, 14–15, 116–35). McKinney reported to Dr. Gordon that he lived with four children and was independent with his personal care; he did laundry, cooked, paid the bills, managed his medication, and drove. (Tr. 14). He was also the primary caregiver for his disabled son, who was confined to a wheelchair. (Tr. 14). Dr. Gordon determined that McKinney would be able to learn and remember work instructions, but she found that McKinney's concentration, attention to detail, and motivation were likely to be poor due to his psychological issues (MDD, GAD, panic disorder, and PTSD). (Tr. 14–15). Dr. Gordon found that McKinney would be able to maintain work relationships and interact with others on the job, but that his high level of distress suggested that he would have difficulty adapting to work pressures. (Tr. 15). Dr. Duncan's observations of McKinney were relatively normal, with no abnormal behavior, disorganized thought, indicators of psychotic process, or issues with memory or concentration. (Tr. 15). Dr. Duncan determined that McKinney's diagnosable mental health issues had been relatively successfully treated; McKinney did not seek out professional mental health care and that his medications appeared to be working well. (Tr. 15). Dr. Duncan found that McKinney had

_____

[4] McKinney filed the prior application on February 20, 2020, alleging an onset date of November 1, 2018. (Tr. 10). The application covered the period from February 20, 2020, to February 26, 2021, when an ALJ denied McKinney's application. (Tr. 10, 116–35). The ALJ in this case denied McKinney's request to reopen that decision. (Tr. 10).

only mild impairments in workplace functioning, including mild impairment in sustaining attention for extended periods, persisting, and keeping pace.  (Tr. 15).

Next, the ALJ pointed to a July 2023 consultative evaluation by Nikki O'Dell, M.S.W., Lic.S.W.[5]  (Tr. 15, 1024–32).  At the visit, McKinney reported living with his four children and feeling close to them and to his grandchildren, who also live with him.  (Tr. 15).  McKinney stated that he was able to take care of himself overall but that his children did most of the cooking, although he also reported issues sleeping and meeting his daily needs.  (Tr. 15).  McKinney indicated that he spends most of his days in his room but also cares for his youngest son, a 13-year-old with cerebral palsy; McKinney feeds his son three times a day through a GI tube.  (Tr. 15).  McKinney stated that he watches television and performs household tasks.  (Tr. 15–16).  He had no difficulty understanding and providing answers, was well-groomed with normal speech, and had a largely normal mental status evaluation.  (Tr. 16).  Ms. O'Dell found a variety of limitations.  Specifically, she found that McKinney had: a mild impairment in his ability to manage basic self-care; a moderate impairment in his ability to understand, carry out, and remember short, simple, 1–2 step instructions; a mild impairment in his ability to maintain attention/concentration for periods of at least two hours; a mild limitation in his ability to maintain a regular schedule with appropriate punctuality; a markedly severe limitation in his ability to maintain work attendance without missing 1–2 days per month; a mild limitation in his ability to sustain an ordinary routine without special supervision; a mild limitation in his ability to seek and accept instructions and criticism from supervisors and peers; a moderate limitation in his ability to maintain appropriate

---

[5] The ALJ incorrectly identified Ms. O'Dell as "Nikki O'Neil."  (Tr. 15).

appearance, behavior, and other aspects of workplace interaction; and a mild limitation in his ability to manage finances reliably and independently. (Tr. 16, 1029–30).

Finally (at least as to Step Three), the ALJ discussed McKinney's March 2022 evaluation by Jennifer Terry, C.R.C., L.P.C. (Tr. 16, 953–58). In this evaluation, Ms. Terry found that McKinney exhibited "higher anxiety and explosive episodes," including an anxiety attack on the way to the appointment. (Tr. 16). McKinney reported to Ms. Terry that he had to stop working at Dollar General and fast food restaurants due to having "black outs." (Tr. 16). McKinney also informed Ms. Terry that he was taking Prozac, Seroquel, and Bupropion, which worked at times but was sometimes not enough at other times. (Tr. 16). Ms. Terry found mild limitations in McKinney's ability to manage basic self-care and to understand and carry out short, simple instructions, but (among other things) extreme limitations in McKinney's ability to maintain attention/concentration and pace for periods of at least two hours. (Tr. 16).

As to the Paragraph B criteria, the ALJ ultimately determined that McKinney had only moderate limitations in his ability to concentrate, persist, or maintain pace (Tr. 17). Specifically, the ALJ found that while McKinney contended that he had limitations in working with others without distracting them, McKinney's self-reported activities of daily living—the ability to drive, prepare meals, watch television, manage funds, and attend church—contrasted with this.[6] (Tr. 17). The ALJ also pointed to evaluations by state agency reviewing psychologists Drs. Larry H. Dennis and Kristin Bailey, finding moderate limitations in this sphere. (*Id.*). Specifically, Dr. Dennis

---

[6] McKinney notes that of these activities, only attending church really involves interacting with others. (Doc. 13 at 11). Although the undersigned agrees with this assessment, it is not particularly relevant given McKinney's overarching argument and the reasons why that argument fails.

found that "Claimant can carry out short and simple instructions but not detailed instructions. Claimant can attend to simple tasks for two hour periods over eight hour day. Claimant will work best with a well spaced work station." (Tr. 74, 83). And Dr. Bailey determined that McKinney "could carry out simple instructions and sustain attention to routine/familiar tasks for extended periods. Claimant could not carry out detailed instructions. Cmt [sic] would benefit from a well spaced setting to minimize anxiety and frustration. Claimant could tolerate ordinary work pressures but should avoid quick decision-making, rapid changes, and multiple demands. Claimant would benefit from regular rest breaks and a slower pace but will still be able to maintain a work pace consistent with the mental demands of competitive level work." (Tr. 99, 110).

The ALJ expounded somewhat on McKinney's limitations in formulating the RFC. First, he noted that "[i]t appears that since the previous decision, [McKinney's] impairments have been largely controlled and the residual functional capacity allows for work related activities. The aggregated record demonstrated good therapeutic effect in response to psychotropic medication and sustained improvement in the claimant's presenting signs, symptoms and mental related functional impairment." (Tr. 19). As to the opinion evidence, the ALJ determined that Ms. Terry's consultative evaluation was not persuasive because of its inconsistency with the evidence and with McKinney's reported activities of daily living, including McKinney's own testimony. (Tr. 22). The ALJ also found that Ms. O'Dell's opinion was somewhat persuasive due to the moderate to mild limitations she found in most spheres, but not as to the marked limitation in maintaining work attendance; the ALJ determined that this marked limitation was inconsistent with the record medical evidence. (Tr. 23). As for the evaluations of Drs. Dennis and Bailey as to McKinney's mental limitations, the ALJ found them "somewhat persuasive given the historical record"; nevertheless, "the medical evidence of record supports the prior decision's residual functional

10

capacity and there is no evidence of any increase in the severity of [McKinney's] impairments." (Tr. 23).

McKinney does not actually take issue with the ALJ's determination that he has a moderate limitation in the area of concentration, persistence, and pace. Nor does he directly argue that the ALJ misevaluated his testimony or the medical opinion evidence. Rather, he argues that the ALJ failed to incorporate concentration, persistence, and pace limitations into the RFC, thus overestimating McKinney's abilities. (Doc. 13 at 11). McKinney contends that "the ALJ only limited [McKinney] to simple instructions or tasks," rendering his RFC "inconsistent with the ALJ's moderate finding . . . at step three" and thus    appear[ing] to contemplate any limitations in this area." (Doc. 11 at 12).

McKinney is incorrect that the RFC imposes no concentration, persistence, and pace limitations. First, that the ALJ did not write on a blank slate in this case. The RFC he found was exactly the same as the RFC from the previous claim, in which the ALJ gave McKinney the benefit of the doubt to find moderate limitations in all four Paragraph B areas. (Tr. 129). Like this application, McKinney's previous application alleged disability beginning on November 1, 2018. The ALJ in this case found that (1) the medical evidence of record in this case substantiated the previous RFC and (2) there was no evidence to support that any of McKinney's impairments had increased in severity from the previous determination such that McKinney would require additional limitations. (Tr. 23).

Second, while McKinney proposes several limitations from the state agency reviewers' opinions that could have been included in the RFC (doc. 11 at 14) (citing tr. 74, 83, 99, 110), the ALJ in large part *did* incorporate state agency reviewer Dr. Dennis's proposed limitations in this sphere. Specifically as to maintaining concentration, persistence, and pace, Dr. Dennis stated that

11

"Claimant can carry out short and simple instructions but not detailed instructions.  Claimant can attend to simple tasks for two hour periods over eight hour day.  Claimant will work best with a well spaced work station."  (Tr. 74, 83).  In the RFC, the ALJ stated: "[McKinney] can understand, remember, and carry out simple instructions.  He can attend and concentrate to perform simple tasks for at least two hour intervals."  (Tr. 17).  Likewise, Dr. Bailey included a restriction on detailed instructions while endorsing McKinney's ability to carry out simple instructions and sustain attention to familiar tasks for extensive periods.  (Tr. 99, 110).  It is true that the ALJ omitted Dr. Dennis's proposed limitation concerning McKinney's work station[7] and some of the restrictions suggested by Dr. Bailey, but it is also clear *why* this happened: there was no evidence to support an increase in the severity of McKinney's impairments from the previous RFC, and thus no reason to conclude that any additional limitations were required beyond what the previous RFC covered.  (Tr. 23).

McKinney relies extensively on *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), which he says rejected the proposition that "an ALJ accounts for a claimant's deficiencies in concentration, persistence, and pace, generally, by limiting them to simple, routine tasks, or unskilled work."  (*See* doc. 13 at 12–13) (citing *Winschel*, 631 F.3d at 1180–81).  In context, the *Winschel* court noted that while other circuits had rejected the argument quoted above, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."

---

[7] It is debatable as to whether this is a limitation at all.  It is not clear that a notation that a claimant would "work best" under a particular set of conditions (as in Dr. Dennis's formulation) is equivalent to a statement that a claimant *cannot* work unless those conditions are present.

631 F.3d at 1180 (citations omitted). Additionally, the court approvingly quoted other circuits' holdings "that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations." *Id*. (citations omitted). Applying that logic, the *Winschel* court concluded that the ALJ's determination at Step Two that the plaintiff's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace, coupled by the ALJ's failure to "indicate that medical evidence suggested [the plaintiff's] ability to work was unaffected by this limitation" or "otherwise implicitly account for the limitation in the hypothetical" posed to the vocational expert, was reversible error. *Id.* at 1181.

The Commissioner notes that subsequent Eleventh Circuit panels applying *Winschel* (albeit in unpublished decisions) have concluded that limiting a claimant to simple work is the sort of implicit accounting for concentration, persistence, and pace limitations endorsed in *Winschel*. (Doc. 20 at 12) (citing *Neefe v. Comm'r of Soc. Sec.*, No. 13–11728, 2013 WL 5381153, *1 (11th Cir. 2013) (relying on *Winschel* to find that medical evidence showed plaintiff could perform simple tasks and holding that the ALJ's hypothetical question implicitly accounted for moderate limitations in concentration, persistence, or pace); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872, n.1 (11th Cir. 2011) (determining that a hypothetical and RFC potentially accounts for a claimant's mental impairment "by including a restriction to simple or routine tasks if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite a limitation in concentration, persistence, and pace")). McKinney concedes this in his reply. (Doc. 21 at 2). But McKinney says this does not apply here because the court would be required to conclude that the ALJ "implicitly account for an ability to attend and concentrate for normal unskilled work (two-hour intervals), but potentially for much longer, such as the level of concentration that is

13

needed in some skilled occupations." (*Id.*). This piggybacks on McKinney's contention that the RFC's statement that McKinney can work for "at least two hour intervals" potentially means that McKinney can work much longer than the two-hour intervals required for unskilled work. (*Id.* at 1–2). What McKinney fails to account for, again, is that (1) the RFC mirrored the previous RFC, with the ALJ providing a rationale based in the record for adopting and (2) the RFC mirrored to a large degree limitations imposed by Dr. Dennis, including the "at least two hour intervals" framework included in the RFC.

For the same reason, McKinney's attempts to distinguish *Neefe* and *Jarrett* are misplaced. In McKinney's view, both cases contained medical evidentiary support for the limitations in concentration, persistence, and pace. (Doc. 21 at 2–3). McKinney argues that such support is absent here. But the ALJ's reliance in large part on Dr. Dennis's formulation for the limitations in concentration, persistence, and pace means that the ALJ did not "play doctor" or rely exclusively on his interpretation of the medical evidence, as McKinney argues (*see id.* at 4–5). And while McKinney contends that the ALJ failed to explain why he imposed fewer restrictions than what Drs. Dennis and Bailey indicated would be required, the ALJ adequately explained this by pointing to the previous RFC and the absence of evidence in the current claim supporting more restrictions than what the previous RFC allowed.

The record contains substantial evidence to support the ALJ's RFC as it pertains to McKinney's concentration, persistence, and pace limitations. Accordingly, the Commissioner's decision is due to be affirmed.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying

McKinney's claim for SSI and a period of disability and DIB is **AFFIRMED**.  A separate order will be entered.

DONE this 20th day of March, 2026.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE